IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MICHAEL EUGENE MARTINEZ,<br><br>Defendant. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br>Case No. 1:10-CR-95-TC |

Defendant Michael Eugene Martinez has been charged with knowing and intentional possession of methamphetamine with intent to distribute, knowing possession a firearm in aid of drug trafficking, and illegal possession of a firearm. He moves to suppress evidence obtained during drug enforcement officers' February 19, 2010 nighttime entry and search of his apartment in Ogden, Utah. Specifically, he moves to suppress all evidence on the basis that, although the officers had a valid warrant to arrest him (he was a parole fugitive), they illegally entered and searched the apartment without a warrant after Mr. Martinez was safely in custody in the hallway of the apartment building.

The court holds that the entry into the apartment was justified. The court further holds that the methamphetamine and cash found in the main compartment of the black computer bag is inadmissible because it was seized without a warrant and its seizure was not justified by any exception to the warrant requirement. But the remainder of the search was valid and so the court will not suppress the other evidence the United States seeks to introduce in this case. For these

reasons, Mr. Martinez's Motion to Suppress is GRANTED IN PART AND DENIED IN PART.

**FINDINGS OF FACT**[1]

**The Investigation and Search Warrant**

In January 2010, Agent Cartwright of the Davis County Narcotics Strike Force called Officer Ken Huckaby, a gang investigator and member of the Weber-Morgan Narcotics Strike Force, with a tip from an informant that members of the Norteños gang, including a high-ranking member named Michael Martinez, were selling drugs out of Apartment 307 at the Adams Place Apartments in Ogden, and that they kept firearms in the apartment.

Through independent investigation, Officer Huckaby learned that Michael Martinez was a documented Norteños gang member. He also learned that Utah Adult Parole and Probation listed "Michael Eugene Martinez" as a parole fugitive who had lived in the Adams Place Apartments. According to Officer Huckaby's research, Mr. Martinez's brother was the registered renter of Apartment 307 and, according to the manager of the apartments, Michael Martinez had been living in Apartment 307. The manager also said that building residents had complained to him about a high level of traffic going in and out of Apartment 307, where surveillance cameras had been installed. Right before drafting the search warrant, Officer Huckaby received information from a recently-arrested gang member who corroborated much of the information Officer Huckaby had already received. In addition, Officer Huckaby talked to the same informant whom Agent Cartwright had interviewed. The informant said he had purchased methamphetamine from Michael Martinez.

---

[1]The facts are taken from the testimony and evidence admitted during the December 2, 2010 evidentiary hearing on Mr. Martinez's motion to suppress. (See Dec. 2, 2010 Tr. of Evidentiary Hr'g on Def's Mot. Suppress Evid. (Docket No. 29) ("Tr.").)

Officer Huckaby visited the Adams Place Apartments and studied the physical layout of the apartment building. The building was a former hotel in a large multi-story building with long narrow hallways and apartments that were converted hotel rooms (one entrance, one main room and an adjoining bathroom).

Before applying for the warrant, Officer Huckaby attempted to make a controlled drug purchase through the recently-arrested informant. (See Aff. for Search Warrant (Pl.'s Ex. 5) at 3.) Because his attempt was unsuccessful, he applied for a warrant that narrowly focused on Mr. Martinez and the area he was in (based on Mr. Martinez's status as a parole fugitive). Before the search, Officer Huckaby obtained permission from two separate parole agents to search Mr. Martinez and the location where he was found under the state parole statute.

Based on the information he had gathered, Officer Huckaby submitted an affidavit and application for a search warrant. In his affidavit, he set forth what he had learned from fellow officers, informants, his own computer research, his surveillance of the building, and an interview with the apartment building manager. (See Pl.'s Ex. 5.)

After receiving the warrant, Officer Huckaby, who had also been on the Ogden Metro S.W.A.T. team for twelve years, discussed with the Ogden S.W.A.T. team leader the manner in which the agents would enter Apartment 307 and seize Mr. Martinez. They decided to use the more cautious "breach and hold" entry method, using a ballistics shield (a hand-held bullet-proof shield). He viewed the situation as high risk, given the tip that weapons were in the apartment and that one or more gang members may be inside the apartment. "I chose to not just run into the apartment to grab [Mr. Martinez]. So [for] officer safety I chose to just use a shield and basically be very careful about the whole thing." (Tr. 23-24.) "[W]e just didn't want to go just running

3

into an apartment where we know that there's possibly weapons and unknown people." (Tr. 18.)

In preparation for the search, he gave the information set forth in the affidavit to the officers assisting with the warrant.

**<u>The Entry and Search of Apartment 307</u>**

On the night of February 19, 2010, the officers went into the building to arrest Mr. Martinez in Apartment 307. Apartment 307 was a tiny one-room apartment on the third floor of a three-story building that had been converted from a hotel to apartments. The entire apartment consisted of one main room with a bathroom separated from the main room by a dividing wall that formed a small hallway by the entryway. The apartment had only one entrance and no back door.

The four "entry team" officers lined up in single file in the narrow building hallway, with the first officer holding the shield as another officer forced open the locked door. The officers identified themselves as police officers with a search warrant and called for every person in the apartment to come out. The entry and protective sweep were recorded on video by a camera mounted on the helmet of one of the S.W.A.T. team members. The video corroborates the testimony of the officers. (See Pl.'s Ex. 7.)

After the officers forced the door open (they did not go into the apartment at that time), they identified themselves as police officers and ordered anyone inside the apartment to come out. After about ten seconds, Officer Kasey Burrell saw a man peek out from behind the wall in the main room. That man, later identified as Mr. Martinez, came out of the apartment and Officer Beck took him into custody. According to Officer Burrell, as Mr. Martinez came out he kept glancing back at the dividing wall as if he were looking at someone. The officers continued to

call into the apartment for anyone still inside to come out. After about ten seconds, when they had no further response, Officers Burrell and Hutchinson went into the apartment. Officer Burrell checked the bathroom. No one else was in the apartment.

While Officers Burrell and Hutchinson were clearing the apartment and securing the space where Mr. Martinez had first appeared, Officer Hutchinson saw a clear plastic bag containing a white powdery substance. The bag was lying on the floor where Mr. Martinez had first appeared. He also saw on the floor a handgun partially tucked under a black computer bag, and a silver digital scale on a table in the main room. Officer Hutchinson told Officer Huckaby and Sergeant Troy Burnett, who was supervising the search, what he had seen. Neither Officer Burrell nor Officer Hutchinson touched the bags or the gun.

After the entry team secured the apartment, a second team of officers, led by Sergeant Burnett, went into the apartment and began searching. Sergeant Burnett needed to secure the gun on the floor. In order to do that, he had to pick up the computer bag that was partly covering the gun.

> Q When you picked up that bag, what was your intention?
> A To secure the gun. To move it so I could properly, safely and conveniently secure the gun. . . . I have to make sure that it's safe to pick up and that it's not cocked or anything. So in order to do that, the bag was kind of laying across the top of the gun.

(Tr. 81.)

As Sergeant Burnett lifted the computer bag to uncover the handgun, he saw in an open

5

side pocket[2] a clear plastic bag containing a white powdery substance which he suspected, based on his training and experience, to be methamphetamine. After he secured the handgun, he seized the gun, the black computer bag, the clear baggie lying next to the computer bag (see Pl.'s Exs. 1-2), and the baggie in the side pocket of the computer bag (see Pl.'s Ex. 4). He then searched the main compartment of the computer bag, in which he found approximately $26,000 in cash and another clear bag containing what he suspected was a large amount of methamphetamine.[3]

All of this activity lasted only a few minutes. After finishing the protective sweep, Sergeant Burnett and Officer Huckaby discussed whether they needed a warrant to continue searching. Sergeant Burnett ultimately decided that a warrant was not required because he believed that Mr. Martinez's status as a parole fugitive gave the officers authority to search without a warrant. He was mistaken. The statute that allowed such a search did not apply because Mr. Martinez's parole agreement pre-dated the effective date of the Utah law. But Officer Burnett was not aware of that fact at the time, and his instructions to the officers to search were based on Mr. Martinez's parole fugitive status.

## CONCLUSIONS OF LAW

Defendant Michael Martinez challenges the officers' warrantless entry into and search of the apartment. The United States contends that the search was valid as a search incident to arrest and a protective sweep. It further contends that the evidence it seeks to introduce was in plain

---

[2] The pocket was already unzipped when the officers found the bag. (See Tr. 81-84; Pl.'s Ex. 2.)

[3] Although other parts of the apartment were searched and evidence seized without a warrant, the United States concedes that no exception to the warrant requirement applies to that evidence and that the Government will not be using that evidence against Mr. Martinez. Accordingly, the court will not elaborate on those aspects of the search.

view. Specifically, the United States seeks to introduce the following evidence: the handgun on the floor, the methamphetamine found on top of the black computer bag, the methamphetamine inside the unzipped pocket of the black computer bag, the digital scale on the table, and the methamphetamine and the cash found inside the closed compartment of the computer bag.

Mr. Martinez asserts that (1) the protective sweep was not justified because the information upon which the officers based their conclusions was unreliable; (2) the search of the apartment exceeded the scope of any search allowed under the "search incident to arrest" doctrine; (3) the bag of methamphetamine in the side pocket of the computer bag was not in plain view; (4) the warrantless search of the inside of the computer bag was not justified by the plain view doctrine; and (5) the search so grossly exceeded the scope of the arrest warrant and the plain view doctrine that all evidence seized during the search should be suppressed.

For the reasons set forth below, the court holds that (a) the entry and initial search of the apartment were justified under the protective sweep doctrine; (b) the methamphetamine and $26,485.00 in cash found inside the closed compartment of the computer bag were not in plain view so they must be suppressed; and (c) the remainder of the evidence the Government seeks to introduce[4] was in plain view and so is admissible.[5]

---

[4] In its opposition brief, the United States concedes that the rest of the evidence seized without a warrant during the "post-protective sweep search" (e.g., the gun in the lockbox under the couch, marijuana pipes in the drawers, and marijuana in a shoe) is not admissible because it was not in plain view. (See U.S.'s Mem. Opp'n to Def.'s Mot. Suppress Evid. (Docket No. 40) at 13-14.) Accordingly, the court need not address the admissibility of that evidence other than to say (as discussed further below) that it should be not be suppressed based on any alleged "flagrant disregard" of the scope of the search warrant.

[5] Because the officers' entry and limited search constituted a valid protective sweep of the apartment, and because the "search incident to arrest" doctrine would not extend to the search of the main compartment of the black computer bag, the court does not reach the United States's

7

**The entry into and search of the apartment were valid under the protective sweep doctrine.**

A warrantless search is *per se* unreasonable under the United States Constitution unless it falls within one of the well-recognized exceptions to the warrant requirement. Arizona v. Gant, 129 S. Ct. 1710, 1716 (2009) (citing Katz v. United States, 389 U.S. 347, 357 (1967)). Although the Government had a warrant to arrest and search Mr. Martinez himself, it concedes that it did not have a warrant to enter and search the apartment and subsequently seize certain evidence.[6] Here, the Government relies on the protective sweep exception to the warrant requirement to justify its actions.

The law permits a protective sweep "if the searching officer possessed a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted the officer in believing that the area swept harbored an individual posing a danger to the officer or others." Maryland v. Buie, 494 U.S. 325, 327 (1990) (internal quotation marks and citations omitted). A "protective sweep" is "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Id.

Mr. Martinez contends that tips from the informants were not reliable so no reasonable suspicion existed to enter the apartment. But he provides no support for that contention. Instead, the record indicates that the officers had a reasonable concern for their safety. Officer Huckaby

---

argument that the entry and search were justified as a search incident to arrest under Arizona v. Gant, 129 S. Ct. 1710 (2009).

[6]Mr. Martinez does not challenge the validity of the search warrant or his arrest.

did not base his conclusion solely on what the informant said. Moreover, much of what the informant said was corroborated by independent research.

Mr. Martinez also contends that the search was not cursory, because the officers looked, for example, in drawers, in shoes, under the couch, in a lockbox, in Mr. Martinez's wallet, and inside the zippered computer bag. But the government does not seek to introduce evidence obtained through that part of the search. The time when officers entered the apartment to look for other suspects and visually confirmed that they were not in danger of ambush by one or more armed suspects in the apartment was brief. During that time, the evidence in plain sight was discovered through purely visual inspection.

Mr. Martinez specifically challenges the admissibility of the baggie in the side pocket of the computer bag and the large sum of cash and large amount of suspected methamphetamine found in the main (inner) compartment of the computer bag. He contends that the evidence was not in plain view and so is not admissible under any exception to the warrant requirement.

"Under the plain view doctrine, police officers may properly seize evidence of a crime if (1) the officer was lawfully in a position from which the object seized was in plain view, (2) the object's incriminating character was immediately apparent (i.e., there was probable cause to believe it was contraband or evidence of a crime), and (3) the officer had a lawful right of access to the object." United States v. Thomas, 372 F.3d 1173, 1178 (10th Cir. 2004). The officer has lawful right of access if the officer is in the home due to exigent circumstances. Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971) ("Where the initial intrusion that brings the police within plain view of such an article is supported, not be a warrant, but by one of the recognized exceptions to the warrant requirement, the seizure is also legitimate."); Thomas, 372 F.3d at

9

1177-78 (holding that seizure of gun was lawful under plain view doctrine when officers entered apartment based on their reasonable concern that firearms might be used against them or others).

The officers' entry into the apartment and quick search for suspects was justified by exigent circumstances. They had reliable information that more than one person would be in the apartment (for example, they believed Mr. Martinez and his brother would be there, as well as possibly other gang members or drug purchasers). Only one person came out when they shouted into the apartment. And that person kept glancing back as he came out of the apartment. The officers had reliable information that Mr. Martinez and others in the apartment would be armed, that Mr. Martinez was a gang member, that drug trafficking was occurring at the apartment, and that the apartment was set up with surveillance equipment. All of this contributed to their reasonable belief that the apartment might have harbored one or more individuals who posed a danger to the officers. See United States v. Hauk, 412 F.3d 1179, 1184-85, 1191-92 (10th Cir. 2005) (holding that quick search of house based on anonymous tip that drugs were being sold in the house was valid protective sweep); United States v. Cavely, 318 F.3d 987, 995-96 (10th Cir. 2003) (holding that officers' entry into the house after arresting the suspect outside was valid protective sweep).

As for the evidence the Government contends was in plain view, the court finds the United States' argument only partially persuasive. The methamphetamine and money inside the main compartment of the computer bag were not in plain sight. Sergeant Burnett had to open the bag to see what was inside. That evidence must be suppressed. But the baggie in the side pocket was spotted visually by Sergeant Burnett as he justifiedly picked up the black bag to uncover the handgun. That is sufficient to satisfy the plain view doctrine. See United States v. Jackson, 381

F.3d 984, 989 (10th Cir. 2004) (holding that warrantless search of container was justified under plain view exception to warrant requirement when officer sees, within plain view, contents of a container and "it is apparent or a 'foregone conclusion' that such contents are contraband.").

**The officers did not flagrantly disregard the scope of the search warrant.**

Mr. Martinez contends that the officers' search grossly exceeded the scope of the written warrant and plain view doctrine. According to Mr. Martinez, the officers showed a "flagrant disregard" of the limits of their searching authority by conducting a general exploratory search. The remedy, he maintains, is suppression of all the seized evidence.

To support his position, he cites to United States v. Medlin, 842 F.2d 1194 (10th Cir. 1988). In Medlin, the court found that a deputy sheriff assisting federal agents with a firearms search warrant engaged in a fishing expedition when he seized 667 items of allegedly stolen property not related to firearms. See id. at 1195-96. The court found that the officers exhibited flagrant disregard of the terms of the warrant and so the court suppressed all of the evidence seized, including the firearms named in the warrant. Id. at 1199.

Medlin is distinguishable. First, it addresses the execution of a written search warrant, unlike here, where a valid exception to the warrant requirement applies. Second, in Medlin the prosecution attempted to use the unrelated evidence against the defendant at trial. Here, the United States does not rely on the written warrant to justify the search and seizure of items from the apartment. Indeed, the United States concedes that much of what the officers took is not admissible.

Also, as noted by the United States, the officers were acting under the mistaken but nevertheless good faith belief that Mr. Martinez's parole fugitive status authorized a search of the

place where he was found. Under the circumstances here, blanket exclusion of all evidence is not an appropriate remedy.

**ORDER**

For the foregoing reasons, the court ORDERS as follows:

1. Defendant Michael Eugene Martinez's Motion to Suppress (Docket No. 22) is GRANTED IN PART AND DENIED IN PART. It is hereby ORDERED that the methamphetamine and cash found in the main zipped-up compartment of the black computer bag is SUPPRESSED. The remaining evidence the United States seeks to introduce against Mr. Martinez is not suppressed because it was seized under well-recognized exceptions to the warrant requirement.

2. To comply with the Speedy Trial Act, the court hereby sets a three-day jury trial to begin Tuesday, May 31, 2011, at 8:30 a.m.

DATED this 17th day of May, 2011.

BY THE COURT:

*Tena Campbell*
TENA CAMPBELL
District Court Judge